Approved: ___S/ by the Court with permission___
            CHRISTINE I. MAGDO
            Assistant United States Attorney

Before:  THE HONORABLE ROBERT W. LEHRBURGER
            United States Magistrate Judge
            Southern District of New York

# 22 MAG 4546

- - - - - - - - - - - - - - - x
                   :
                   :   **SEALED COMPLAINT**
UNITED STATES OF AMERICA  :
                   :   Violations of
     - v. -           :   15 U.S.C. §§ 78j(b) & 78ff;
                   :   17 C.F.R. § 240.10b-5; and
FRANK GLASSNER,        :   18 U.S.C. §§ 1348 & 2
                   :
      Defendant.      :   COUNTY OF OFFENSES: New York
                   :
- - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

    LAUREN COLLINS, being duly sworn, deposes and says that she is a Special Agent with the Federal Bureau of Investigation ("FBI") and charges as follows:

## COUNT ONE
### (Securities Fraud)

    1.   From at least in or about July 2021 through at least in or about September 2021, in the Southern District of New York and elsewhere, FRANK GLASSNER, the defendant, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails and the facilities of national securities exchanges, used and employed manipulative and deceptive devices and contrivances, in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making and causing to be made untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, GLASSNER executed transactions in the securities of Kadmon Holdings, Inc. ("Kadmon") based on material, non-public information regarding the forthcoming acquisition of

Kadmon by Sanofi, S.A. ("Sanofi"), which information GLASSNER misappropriated through his employment as an executive compensation consultant for Kadmon, and in breach of his duties to Kadmon.

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Sections 240.10b-5;
and Title 18, United States Code, Section 2.)

## COUNT TWO
### (Securities Fraud)

2.     From at least in or about July 2021 through at least in or about September 2021, in the Southern District of New York and elsewhere, FRANK GLASSNER, the defendant, willfully and knowingly, executed, and attempted to execute, a scheme and artifice to (a) defraud persons in connection with a security of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that is required to file reports under Section 15(d) of the Securities Exchange Act of 1934, and (b) obtain, by means of false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that is required to file reports under Section 15(d) of the Securities Exchange Act of 1934, to wit, GLASSNER executed a scheme to defraud by converting confidential business information regarding Sanofi's forthcoming acquisition of Kadmon to his own use for the purpose of executing transactions in Kadmon securities.

(Title 18, United States Code, Sections 1348 and 2.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

3.     I have been a Special Agent with the FBI for approximately two years. I am currently assigned to a squad responsible for investigating violations of the federal securities laws and related offenses. I have participated in investigations of such offenses, and have made and participated in arrests of individuals who have committed such offenses.

4.     The information contained in this Complaint is based upon my personal knowledge, as well as information obtained during this investigation, directly or indirectly, from other sources, including documents and information provided to me by others. The

documents and information include, but are not limited to, (a) business records and other documents, including trading records, brokerage records, bank records, telephone records, and records of electronic communications provided by various entities; (b) publicly available documents; (c) witness interviews; (d) conversations with, and reports and documents prepared by, another law enforcement officer; and (e) conversations with representatives from the United States Securities and Exchange Commission ("SEC"). Because this Complaint is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions and statements of and conversations with others are reported herein, they are reported in substance and in part. Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

## Overview of the Insider Trading Scheme

5.   As set forth below, there is probable cause to believe that FRANK GLASSNER, the defendant, misappropriated material, non-public information ("MNPI") through his employment as an executive compensation consultant to Kadmon, in violation of duties that he owed to the Kadmon, and used that information to make profitable trades in the stock and derivative instruments of Kadmon. Between approximately in or about July 2021 and in or about September 2021, Kadmon engaged GLASSNER and his consulting firm to provide executive compensation consulting services related to the potential acquisition of Kadmon. As a result of this engagement, GLASSNER learned, among other things, that Kadmon would be acquired at a per-share price significantly above the share price at which Kadmon was trading. Based on that information, GLASSNER purchased Kadmon stock and Kadmon call options[1] (together, "Kadmon Securities") in advance of the September 8, 2021 public announcement that Kadmon would be acquired. On September 8, 2021, after the public announcement, Kadmon's share price increased by approximately 71%, and GLASSNER earned approximately $405,000 of realized and unrealized profits on the Kadmon Securities he had previously purchased.

---

[1] A call option is a contract that gives the option buyer the right, but not the obligation, to buy a specific security (such as stock) at a specified price (the strike price) within a specific time period (before the option's expiration date). Purchasing a call option is consistent with a belief that the price of the underlying security will increase.

## Relevant Entities and Individuals

6.   At all times relevant to this Complaint, FRANK GLASSNER, the defendant, was the principal of an executive compensation consulting firm based in Novato, California (the "Consulting Firm") that provided, among other services, analysis of executive compensation in connection with mergers and acquisitions.

7.   At all times relevant to this Complaint, Kadmon was a biopharmaceutical company headquartered in New York, New York that engaged in the discovery, development, and commercialization of small molecules and biologics with a focus on inflammatory and fibrotic diseases. Kadmon's stock was traded under the ticker symbol "KDMN" on the NASDAQ Stock Exchange, headquartered in Manhattan, New York.

8.   At all times relevant to this Complaint, an individual not herein named ("Individual-1") was the General Counsel of Kadmon.

9.   At all times relevant to this Complaint, Sanofi S.A. ("Sanofi") was a multinational pharmaceutical company headquartered in Paris, France that engaged in the research, development, manufacturing and marketing of pharmaceutical drugs, principally in the prescription market.

## The Defendant's Confidentiality Agreement with Kadmon

10.  Based on a review of publicly available information, documents including emails and confidentiality agreements provided by Sanofi, and witness interviews, I have learned that FRANK GLASSNER, the defendant, was the founder and principal of the Consulting Firm. From in or about 2015 through in or about the fall of 2021, Kadmon retained GLASSNER and the Consulting Firm on numerous occasions to provide advice regarding the compensation of Kadmon's officers and directors. In order to conduct this consulting work for Kadmon, GLASSNER received material, non-public information.

11.  On or about February 19, 2015, GLASSNER entered into a confidentiality agreement with Kadmon (the "2015 Confidentiality Agreement"), which stated, in relevant part, that:

       a.   "This Confidentiality Agreement is made ... to assure the protection and preservation of certain confidential and/or proprietary information to be disclosed or made available

by one party to the other in the course of their business relationship[.]"

b.   "Each Receiving Party shall use the Disclosing Party's Proprietary Information solely for the purposes of evaluating such Proprietary Information, participating in any business relationship between the parties, or making decisions or rendering advice in connection therewith. Neither Receiving Party shall make any other use of the Disclosing Party's Proprietary Information without the Disclosing Party's specific written authorization."

12.   On or about September 5, 2018, Individual-1 sent an email to FRANK GLASSNER, the defendant, attaching an updated version of Kadmon's confidentiality agreement (the "2018 Confidentiality Agreement"). To the terms of the 2015 Confidentiality Agreement, the 2018 Confidentiality Agreement added, in relevant part, that:

a.   "Each party acknowledges that in its examination of the Proprietary Information, it and its Representatives may have access to material non-public information concerning a Disclosing Party. Each party acknowledges that it is aware (and that it has or will advise its Representatives) that the U.S. and other applicable securities laws prohibit any person who has received material non-public information relating to a Disclosing Party from a Disclosing Party from purchasing or selling securities of such Disclosing Party or from communicating such information to any other person under circumstances in which it is reasonably foreseeable that such person is likely to purchase or sell such securities. As such, each party agrees that it will not engage or cause anyone else to engage in market transactions relating to the securities or other financial instruments of a Disclosing Party or effect any other transaction in such securities or financial instruments (including, without limitation, transactions in derivative instruments that reference such securities) on the basis of such material non-public information with parties unaware of such material non-public information."

b.   According to Individual-1, GLASSNER did not return a signed copy of the 2018 Confidentiality Agreement to Individual-1. On or about September 5, 2018, Individual-1 sent an email to GLASSNER containing confidential compensation information and stating, in relevant part: "Given our history, I think we can deal with the CDA [confidential disclosure agreement] contemporaneously

with this – and trust everything in here can be treated as confidential."

## The Defendant's Brokerage Accounts

13. Based on my review of records obtained from a brokerage firm (the "Brokerage Firm"), I have learned the following, in substance and in part:

a. On or about May 22, 2014, the Brokerage Firm approved an application to open an individual securities trading account (the "Brokerage Account") in the name of FRANK GLASSNER, the defendant.

b. On or about June 6, 2005, the Brokerage Firm approved an application to open an Individual Retirement Account ("IRA") securities trading account (the "IRA Account," together with the Brokerage Account, the "Brokerage Accounts") in the name of GLASSNER.

c. The account opening documents for the Brokerage Accounts do not indicate that anyone other than GLASSNER had authority to trade in the Brokerage Accounts.

d. I have obtained trading records for the Brokerage Accounts back to January 2016. Prior to the trades described herein, the records do not reflect any KDMN options or equity trades in the Brokerage Accounts.

## The Defendant's Insider Trading Scheme

14. Based upon a review of public records, records related to the Brokerage Accounts provided by the Brokerage Firm, telephone records, records supplied by Kadmon and Sanofi, including emails and text messages, and a transaction chronology prepared by counsel for Kadmon, I have learned that:

a. On or about June 16, 2021, Sanofi contacted Kadmon to explore the potential for a collaboration between the companies.

b. On or about July 16, 2021, Kadmon publicly announced that the U.S. Food and Drug Administration ("FDA") had approved the use of Rezurock (Belumodsudil), Kadmon's treatment for graft-vs-host disease, in pediatric patients over the age of twelve.

c.   On or about July 20, 2021, Sanofi informed Kadmon of Sanofi's interest in pursuing a potential acquisition of Kadmon, and the two companies signed a confidentiality agreement.

d.   On or about July 26, 2021, Kadmon signed a confidentiality agreement with another pharmaceutical company ("Company-1") in order to explore a potential acquisition of Kadmon by Company-1.

e.   On or about July 29, 2021, representatives of Kadmon contacted representatives of another pharmaceutical company ("Company-2") regarding a potential acquisition of Kadmon by Company-2.

f.   On or about July 30, 2021, at or about 2:51 p.m. EDT, Individual-1 placed a telephone call to FRANK GLASSNER, the defendant, which call lasted approximately 6 minutes. During the call, Individual-1 told GLASSNER, in sum and relevant part, that Individual-1 was going to bring GLASSNER "over the wall," by which Individual-1 meant that Individual-1 was about to share some highly confidential information with GLASSNER. During the call, Individual-1 told GLASSNER, in sum and relevant part, that there was serious interest by more than one company in acquiring Kadmon and Individual-1 expected that one or more of those companies would imminently make an offer to acquire Kadmon. During the call, Individaul-1 asked GLASSNER, in sum and relevant part, to work with Kadmon's outside counsel to provide an executive compensation analysis in connection with the sale of Kadmon. On or about the same day, at or about 3:24 p.m. EDT, through the Brokerage Firm's website, GLASSNER retrieved the user ID for his online account with the Brokerage Firm.

g.   On or about August 2, 2021, the balance in the Brokerage Account was approximately $356.81 and the last time GLASSNER had traded in the Brokerage Account was in or about April 2018. On or about August 2, 2021, GLASSNER transferred approximately $100,000 by wire transfer from a bank account in the name of the Consulting Firm (the "Firm Bank Account") to the Brokerage Account.

h.   On or about August 3, 2021, Kadmon's Board of Directors formally approved the exploration of a potential sale of Kadmon. On or about the same day, GLASSNER purchased approximately 23,500 shares of Kadmon common stock in the Brokerage Account for a total cost of approximately $100,102.50. On or about the same day, GLASSNER initiated a wire transfer in the amount of approximately $20,000 from the Firm Bank Account to the Brokerage Account.

i. On or about Tuesday, August 4, 2021, Sanofi submitted a non-binding indication of interest to acquire Kadmon for $7.00 per share in cash. On or about the same day, the $20,000 wire transfer that GLASSNER had initiated on or about August 3, 2021 was received into the Brokerage Account and GLASSNER then purchased approximately 4,550 shares of Kadmon common stock in the Brokerage Account for a total cost of approximately $20,163.50.

j. On or about August 5, 2021, Kadmon signed a confidentiality agreement with another pharmaceutical company ("Company-3") regarding a potential acquisition of Kadmon by Company-3. On or about the same day, GLASSNER transferred $1,000 from the Firm Bank Account to the Brokerage Account by wire transfer, and GLASSNER then purchased approximately 200 shares of Kadmon common stock in the Brokerage Account for a total cost of approximately $894.39.

k. On or about August 6, 2021, at or about 12:27 p.m. EDT, Individual-1 placed a telephone call to GLASSNER, which call lasted about 8 minutes. At or about 12:37 p.m. EDT, Individual-1 sent an email to GLASSNER and Kadmon's outside counsel regarding the anticipated merger and the compensation analysis on which GLASSNER and Kadmon's outside counsel would participate. At or about 12:39 p.m. EDT, GLASSNER's wire transfer of approximately $10,000 from the Firm Bank Account was received into the Brokerage Account. At or about 1:02 p.m. EDT, GLASSNER purchased 60 Kadmon call options with a strike price of $5 and an expiration date of March 18, 2022, for a total cost of approximately $9,900. On or about that same day, KDMN closed at $4.98 per share.

l. On or about August 9, 2021, Sanofi revised its offer to acquire Kadmon to $9.00 per share. On or about the same day, GLASSNER transferred approximately $25,000 from the Firm Account to the Brokerage Account by wire transfer.

m. On or about August 10, 2021, GLASSNER placed a telephone call to Individual-1 and left a voicemail message. Shortly thereafter, Individual-1 placed a telephone call to GLASSNER, which call lasted approximately 17 minutes. During this call, Individual-1 told GLASSNER, in sum and substance, additional information about the anticipated merger, including transaction bonuses and employment contract-related issues.

n. On or about August 12, 2021, the balance in the IRA Account was approximately $83.57, which balance GLASSNER in or about that morning used to purchase 15 shares of Kadmon common stock for approximately $76.70. At or about 4:15 p.m. EDT, GLASSNER placed a telephone call to Individual-1, which call lasted

approximately 1 minute and 23 seconds. At or about 4:23 pm. EDT, Individual-1 placed a telephone call to GLASSNER, which call lasted approximately 10 minutes.

o.   On or about August 13, 2021, GLASSNER transferred approximately $500 from the Firm Bank Account to the Brokerage Account by wire transfer.

p.   On or about August 16, 2021, GLASSNER transferred approximately $12,000 from the Firm Bank Account to the Brokerage Account by wire transfer. On or about that same day, GLASSNER purchased 80 Kadmon call options with a strike price of $5 and an expiration date of March 18, 2022 in the Brokerage Account at a total cost $12,000. At market close on that same day, KDMN was trading at $4.76 per share.

q.   On or about August 17, 2021, GLASSNER placed a telephone call to Individual-1, which call lasted approximately 6 minutes. On or about that same day, GLASSNER transferred approximately $13,000 from the Firm Bank Account to the Brokerage Account by wire transfer. On or about the same day, GLASSNER purchased 100 Kadmon call options with a strike price of $5 and an expiration date of December 17, 2021 and 180 shares of Kadmon common stock in the Brokerage Account, at a total cost of approximately $13,361.51. At market close on that same day, KDMN was trading at $4.91 per share.

r.   On or about August 18, 2021, at or about 10:12 a.m. EDT, GLASSNER's wire transfer of approximately $3,000 from the Firm Bank Account was received in the Brokerage Account. At or about 10:16 a.m. EDT, GLASSNER placed a call to Individual-1, which call lasted approximately 2 minutes. At or about 10:21 a.m. EDT, GLASSNER's wire transfer of approximately $12,000 from the Firm Bank Account was received in the Brokerage Account. At or about 10:31 a.m. EDT, GLASSNER purchased 100 Kadmon call options with a strike price of $5 and an expiration date of December 17, 2021 for a total price of approximately $12,500. At market close on that same day, KDMN was trading at $4.84 per share. At or about 5:58 p.m., GLASSNER placed a call to Individual-1, which call lasted about 97 seconds.

s.   On or about August 19, 2021, Kadmon and Sanofi engaged in due diligence calls related to the potential merger. On or about that same day, GLASSNER transferred approximately $19,000 from the Firm Bank Account to the Brokerage Account by wire transfer and purchased, through the Brokerage Account, 175 Kadmon call options with a strike price of $5 and an expiration date of

December 17, 2021 for a total cost of approximately $20,075. On or about that same day, KDMN closed at $4.84 per share.

t.    On or about August 20, 2021, at 1:43 p.m. EDT, GLASSNER placed a telephone call to Individaul-1, which call lasted approximately 8 minutes. On or about that same day, Individual-1 told GLASSNER, in sum and substance, that the buyout offer had increased to $9.00 per share. On or about that same day, GLASSNER purchased, through the Brokerage Account, 10 Kadmon call options with a strike price of $5 and an expiration date of December 17, 2021 for a total cost of approximately $1,200.

u.    On or about August 21, 2021, Sanofi revised its offer to acquire Kadmon to $9.50 per share. On or about the same day, Individual-1 sent a text message to GLASSNER which stated, "Frank, things moving quickly. Can I get revised analysis include $9.50 today please?"

v.    On or about August 22, 2021, GLASSNER placed a telephone call to Individual-1, which call lasted approximately 3 minutes.

w.    On or about August 23, 2021, Kadmon's Board of Directors authorized Kadmon to enter into an exclusivity agreement with Sanofi. On or about the same day, GLASSNER transferred approximately $18,000 from the Firm Bank Account to the Brokerage Account by wire transfer and GLASSNER then purchased 210 Kadmon call options with a strike price of $5 and an expiration date of September 17, 2021 for a total cost of approximately $17,780.00. At market close on that same day, KDMN was trading at $5.36 per share.

x.    On or about August 24, 2021, Kadmon signed an exclusivity agreement with Sanofi. On or about the same day, GLASSNER placed a telephone call to Individual-1, which call lasted approximately 1 minute.

y.    On or about August 27, 2021, GLASSNER placed a call to Individual-1, which called last approximately 94 seconds, and Individual-1 placed a call to GLASSNER, which call lasted approximately 110 seconds.

z.    On or about September 7, 2021, Kadmon and Sanofi signed a merger agreement. At market close on that same day, KDMN was trading at $5.30 per share.

aa.   On or about September 8, 2021, at or about 1:00 a.m. EDT, Kadmon announced that it had agreed to be acquired by

Sanofi for $9.50 per share in cash. At market close that same day, KDMN was trading at $9.07, an increase of approximately 71% over the previous day's closing price.

       bb. As of September 8, 2021, the Kadmon Securities purchased by GLASSNER had a realized and unrealized gain of approximately $405,000.

       cc. From on or about September 8, 2021 through on or about November 11, 2021, all the remaining Kadmon Securities in the Brokerage Account and the IRA Account were liquidated, for a total realized profit of at least approximately $368,000..

    WHEREFORE, I respectfully request that FRANK GLASSNER, the defendant, be imprisoned or bailed, as the case may be.

S/ by the Court with permission
_____
LAUREN COLLINS
Special Agent
Federal Bureau of Investigation

Sworn to before me this
__23rd__ day of May 2022

_____
HONORABLE ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK